The next case on our calendar is Todd C. Bank v. Kevin McCabe v. Lifetime Entertainment Services. Thank you, Mr. Bank. Good morning. The bulk of McCabe's G. Vigniello-related arguments concern the reasoning of G. Vigniello, and thereby preserved those arguments for appellate review before this Court and or the Supreme Court in the event that the District Court found that G. Vigniello foreclosed McCabe's claims. And if this panel were to find that G. Vigniello foreclosed McCabe's claims, then McCabe, having made those arguments again in his briefs before this Court, would thereby have preserved those arguments for review by an en banc panel of this Court or the Supreme Court, neither of which would be bound by G. Vigniello. They'll be bound by American Pipe, though. They would be bound by American Pipe. Isn't that the dispositive answer to this question? No. As the Seventh Circuit recognized in the Collins case of 2017, American Pipe and Crown Court, neither of those two cases address the issue of whether American Pipe tolling continues or may continue after a District Court's initial denial of certification. Those courts dealt with initial denials of certification by a District Court, but the issue as to whether such tolling continues or, again, may continue after that denial simply wasn't before the Court. Again, Collins explicitly stated that that issue had not been resolved in either American Pipe or by Crown Court. Now, Judge Balserra stated that, quote, all Mr. Bank does is argue that G. Vigniello does not apply to this case, which is simply not true. That was actually a small portion of the arguments that I presented on behalf of Mr. McCabe, drawing distinctions, or I should say one distinction, which is in the briefs, between the facts at issue here and the facts at issue in G. Vigniello. Judge Balserra stated that, referring to me, that I simply argued, was arguing and re-arguing on the basis of irrelevant, immaterial, and baseless distinctions as to why the case should not apply to me, though he should have said McCabe, being that McCabe was the plaintiff. And Judge Balserra said that no reasonable attorney could find any room in G. Vigniello's bright-line test and added that Mr. Bank also just rehashes arguments that he made when arguing G. Vigniello and that you simply cannot, Judge Balserra stated, you simply cannot, under the guise of preserving arguments, re-argue the same position over and over again. But the making of arguments that were presented to the G. Vigniello panel and rejected by that panel is the very essence of preserving arguments for review. The very purpose, the very nature of preserving arguments for review is that those arguments have already been rejected by definition. There wouldn't be anything to preserve otherwise. But Judge Balserra made, it simply didn't make any sense. He did not say, in fact, quite the opposite. He did not say that the arguments that McCabe, or if you want to say I, made were substantively frivolous, which I addressed during the oral argument using an extreme hypothetical just to make my point, mind you. He actually, Judge Balserra, actually stated the opposite. He said, but for G. Vigniello, the arguments that I presented would have had, or likely would have had, some merit, I forget the exact words, some merit, some utility, some other similar word. He did not address the substance of my arguments. And again, he acknowledged that the arguments were meritorious. Well, if that's the case, how is it even logical? How is it even logical that Judge Balserra can say you've made intellectually decent arguments, whether he might, I don't know if he even agreed with them. Maybe he did. I really don't know. He didn't say. You've made intellectually respectable arguments. The en banc court here and the Supreme Court have never addressed, much less rejected those arguments, but you can't make them. Essentially, he ruled that McCabe, and again he seems to focus on me, Judge Balserra did, that McCabe and I simply did not have a right to preserve arguments. But he never gave a reason. Yes, G. Vignella rejected the arguments. That's why we had to preserve them. And again, most of the briefs before the district court and this court were for that exact purpose. And we cited numerous cases that supported our position, some of those cases which were exactly on point, saying that by the logic of American Pipe and the purposes of American Pipe tolling, that it doesn't make any sense to say that tolling stops upon an initial denial of certification. And the reasoning made sense. Just like tolling initially, let's say tolling up to the initial denial of certification, as opposed to no tolling at all. Well, let's say there were no tolling at all. Now putative class members bring claims, and if certification is granted, they've wasted their time. Well, isn't that the same vis-à-vis an appeal? If a putative class member, say a week after a district court denies certification, brings his own action, well, if there's now an appeal, and that appeal reverses the denial, then the action was just a waste of everybody's time, the defendant, the plaintiff, and the court. And that's why in one of the cases that we cited, Davis, the court specifically said that the defendant argues that tolling should continue only on appeal, only if the court reverses the denial. The court said, quote, that argument has no merit. Well, that's what I've argued. And again, the fact that G. Vigniello, or assuming it to be a fact, rejected that argument, just goes back to the question of whether Judge Bolsera was correct in saying that I or McCabe did not have the right to preserve arguments that, in substance, were not frivolous, even debatably frivolous. And one of the only retort, I guess, to our distinction between the facts at issue here and in G. Vigniello, is that Judge Bolsera stated that the denial of certification would more strongly serve to notify putative class members that they would need to follow their own actions. And my response to that is, why would a denial of certification more strongly serve that purpose than, as in G. Vigniello, a case that was dismissed outright? In any event, we didn't focus on that. We focused on the fact that, had G. Vigniello been decided the other way, the result would have been not one tolling period, but two. Two tolling periods. One, from the decision, from the initial denial, I'm sorry, from the dismissal, it's a little confusing in these cases, from the dismissal of the action all the way through the appeal, and then if the appeal is successful, and the case is remanded, from that time again until the initial, or an initial denial of certification. It's fine that Judge Bolsera didn't agree with that reasoning, but there is case law that supports it, some of which Judge Bolsera said incorrectly in our view was abrogated, but again, that goes back to one of Judge Bolsera's very clear misunderstandings. He said, we didn't have the right to cite what he referred to as no longer, as law that was no longer good. Well, that's a total misunderstanding of the very nature of persuasive authority. Anything can be cited for its reasoning. But if it's been abrogated, how could it be cited for the- For its, I'm sorry, for its, yes, I have in the briefs, we talk about that a case that has been overruled, or abrogated, or what have you, unless it's a binding case, of course, if it's from the Eighth Circuit, for example, it can be cited, this court has many times, and we cite examples in the brief of saying, we disagree with our sister circuit, we actually agree with the district court decision that that circuit overturned, and we will follow the district court decision. I mean, again, I don't know, I don't have memorized all the citations in the brief, but yes, persuasive authority, it's authority or reasoning, it could be a law review article, which is not even authoritative in any legalistic sense, it's just somebody's opinion, one can cite anything for its reasoning. The fact that it- You can't make up authority if it doesn't exist. No, again, well, we're talking about non-binding authority, the very term authority is really a term of art. What the Eighth Circuit does, in this court, I'm using the Eighth Circuit as an example, does, as far as this court, it's not authoritative either way. It might be influential, and that's the key, influential. Like I said a moment ago. We can't rely, or you couldn't rely on a southern district case that had been abrogated or reversed by this court, but you can rely on a northern district of Ohio case that's been reversed by the Sixth Circuit. Well, absolutely yes to the latter, and to the former, yes in the context of preserving an argument for further review. Obviously, the reason I did not ask for that, McCabe did not ask the district court to overturn G. Vigniello, and it's the same reason why I am not standing here asking this panel to overturn G. Vigniello, is because we can't. The district court and this panel is bound by G. Vigniello to the extent that our arguments challenge G. Vigniello. I recognize that it would be futile to ask this court or the district court. I'm not sure about that. I mean, once a case has been abrogated or reversed by a circuit, it basically has no life. You can make the argument if you want. You can adopt their reasoning, but the fact that a reversed decision or an abrogated decision was once out there, I don't think gives you any good faith basis to think that your position is plausible. Again, are you referring to courts within this circuit or outside? No, I mean, you're here challenging the fact that you got sanctioned, right? Right. And that's what this argument is about, that you had a good faith basis for making these arguments because there were these lower court cases even though they'd gotten reversed or abrogated. Not all, but let's say they did for the sake of discussion. All right. And I'm suggesting to you that I don't see where an attorney has a good faith basis in law for a particular position based on a lower court decision that was abrogated or reversed by a different circuit. As I said, you can make the argument. I mean, if you want to adopt the rationale of any number of reversed cases, but I don't think you can say, well, I have a good faith basis to think there's legal support for this position. Because, again, and I think that's where the confusion is. I want to be as precise as I can because this is such a, to me, a very fundamental issue of how the whole system works, which is this. An out-of-circuit decision, be it one that's currently good law within that circuit or that's been abrogated or overturned in that circuit, it's not in any way the law in this circuit. It's the reasoning. And, again, I provide examples in the brief where this court followed district courts and other circuits that had been abrogated. How can I not cite them? One particular sentence or two in the magistrate judge's opinion, you keep referring to preserving argument for further review and persuasive authority. I agree with you. You can cite persuasive authority. You can argue for a change in the law. But what's the basis? I think the magistrate judge pointed out there's no dissent in Giovinelli. No circuit has a contrary rule. No scholar is cited who disagrees with its principle. So I think the judgment is made that you could preserve an argument for further review. But what's the basis for thinking you only do that if you think you're going to have some basis for believing you might prevail? Again, there are a number of cases that we talked about, Davis, just top of my head example, that have held the other way. Not all of those cases, by the way, were abrogated. Judge Bolsera in this court in Giovinelli said that eight other circuits agreed with Giovinelli when the answer was only three of them and five of them dealt with it indictive. But again, let's say, like in the Central Bank of Denver case, when every single circuit had ruled a certain way in whatever the issue was, I think it was 11 out of 11 circuits that had addressed the issue, ruled a certain way, and the Supreme Court went the opposite way. But again, we have a history of cases, not all of which were abrogated, but even if they had been. To me, it makes no sense to say that the law—and again, I cited a Southern District case, I think, from 2017, Rubenstein, when the judge said the plaintiff or one of the parties was making an argument that was defeated all over the country, different circuits, what have you, but the argument was not—I don't know the exact wording— but the arguments were not substantively frivolous, and therefore, even though it's a long shot, and even though—pardon me—even though those arguments were foreclosed in the district court, they can still be made. How does it— Counsel, can I reserve three minutes for rebuttal? Yes. You can use it now or you can preserve it. I'll wait. Thank you. Okay. Thank you. We'll hear from Lifetime Entertainment. Thank you, Your Honor. Sharon Schneier for the appellee, Lifetime Entertainment. I think it bears reemphasizing what this Court said in Giovanello. In Giovanello, the Court was very clear that it established a bright-line rule that applies regardless of the basis for the denial of certification, and even, as in that case, if certification had not been reached. Frankly, I'm not sure I quite understand Mr. Banks' efforts to distinguish this situation, the McCabe situation, from Giovanello. His claim, his individual claim, is clearly time-barred. And, by the way, under China Agritech, there's no question that the class claim is time-barred. So the only thing we're talking about is whether Giovanello applies in this case. And I think, as Judge Bolsara found, and as this Court made very clear in Giovanello, which Mr. Banks argued, and as he conceded before Judge Bolsara, he made the same arguments before the Court here, as he made before this circuit that Judge Raggi sat on that panel in 2013, when this Court applied the bright-line rule. Mr. Bank had every opportunity then to appeal the decision and sought in-bank review. This Court denied in-bank review. He had the opportunity to seek cert in that case as well. I don't understand how he could claim that that case is not completely applicable here. And what Judge Bolsara found correctly is that Rule 11, by its terms, provides a litigant the opportunity to argue that there should be a change or reversal in the law. But the rule itself provides that that argument has to be a non-frivolous argument. And that is an objective standard of reasonableness. There is nothing that Mr. McKay presented below that was not considered and argued before this Court in Giovanello. He conceded that it was the same arguments that had been made before that were being presented here. So Rule 11's frivolous standard, which, as I said, is an objective one, has to have some meaning. Otherwise, sanctions can never be appropriate. You're giving a lawyer the opportunity in the face of binding, clear, bright-line precedent to say, I know I lost below, I know the Second Circuit didn't grant in-bank review, but I'm still entitled to make the exact same arguments when there has been no change in the law. And in fact, to the extent he points to the Seventh Circuit, the Seventh Circuit couldn't have been clearer. It says, as a general matter, the consensus view among the circuits is that once certification is denied, the limitations clock immediately, and the Seventh Circuit provides emphasis there, starts ticking again. We've been emphatic on this point. So there has been nothing since Giovanello that would give Mr. McCabe the opportunity to come back to this Court and say, hey, Giovanello was wrongly decided. Essentially, it should not be applying to Mr. McCabe in this case, and that we are making non-frivolous, objective reasons why that case doesn't apply here. Sometimes, we revisit our precedents. We have a procedure called a Minion Bank, which you may know about, where a new case decides that a previous case of this circuit was wrongly decided. We circulate that opinion to all active judges on the Court and announce that we're changing the rule. So how does Mr. Bank get access to that process if he can't even apply? Well, he did not seek in bank review. He did not argue below, and is not arguing here, that that is what he's seeking, a reversal of Giovanello. He's arguing that, as I understand it, that either it doesn't apply here, and he has not cited anything since this Court's decision. And I would say that China Agritech, if anything, which is the Supreme Court's latest pronouncement on American pipe and tolling in this circumstance, if anything, reaffirms the correctness of Giovanello, because it reaffirms, in that context, that there's no class action that Mr. McCabe could follow in this case, that regardless of why certification was denied below, there is no tolling. So, yes, there's always the theoretical possibility that you could argue to a circuit court that their decision from four years ago was incorrectly decided, and they incorrectly did not grant in bank review, even though there has been nothing, and Mr. McCabe cites to nothing, that would lead this Court to conclude that since 2013, there has been any change in the law. And, in fact, as I said, the Supreme Court's latest pronouncement reaffirms the correctness of Giovanello. And, as I said, in theory, you could always argue that a prior case was wrongly decided, but the standard in Rule 11, as I said, is an objective one. You have to put forth a non-frivolous argument. And the only arguments that he makes are arguments that were presented to this Court in Giovanello, were rejected, and there has been nothing since then that would question the objective reasonableness of that prior holding. And I think Judge Bulsara exercised his discretion appropriately. Judge Corman appropriately affirmed that finding, that in this case, Mr. McCabe or Mr. Bank had provided no reasonable arguments for a change in the law. While this circuit recognizes that possibility, and I'm citing to the Eastway construction case, there has to be a reasonable argument that can be advanced for the change in the law. And here, no such argument has been presented. Thank you. Thank you. Mr. Bank, what is the base, what reasonable argument can you make that Giovanello was wrongly decided, or that there's any basis to believe that this circuit wants to revisit that precedent? Well, the arguments about Giovanello are basically that the rationales of American pipe towing don't end upon an initial denial of certification. And again, one of the reasons, or the reason, why on-bank review wasn't sought from the outset here, although we certainly have preserved the right to do so, which I emphasized, is because we did make a distinction between the facts in Giovanello. On-bank review of Giovanello? Yes, we did. It was denied? It was denied. Do you think, sir? We did. Denied? Denied. And as I'm sure this Court is well aware, denials of those two types of petitions have no meaning, or no bearing, I should say, on the merits. I know that was one of the arguments that Lifetime emphasized, and I think Judge Balserra as well, that those petitions were denied. But again, and we cite it in the briefs, it's black-letter law, that one cannot use the denial of those petitions to have any meaning whatsoever. It does not necessarily reflect on the merits, or lack thereof, if that's the case, of our arguments. But again, Your Honor made a point. Essentially, Judge Balserra is saying that in light of Giovanello, an on-bank panel of this Court, nor the Supreme Court in a case that began within this circuit, can never be presented. Somebody else has to take the lead. Did you present, did you seek either on-bank or Supreme Court review in Giovanello? Yes, both. And you were denied? That's correct. So why isn't that, that makes it even more difficult, it would seem to me, for you to say you've got a good-faith argument that this panel should not follow Giovanello? No, I disagree entirely, because again, and this is, I'm frustrated because with all due respect, it's a black-letter principle, and we cite it in the briefs. The denial of petitions for on-bank review and certiorari are not to be interpreted to have any meaning whatsoever. There are numerous reasons separate from the merits of a position. There are numerous reasons why an on-bank panel might, as it usually does, reject a petition. Same with the Supreme Court. If the Supreme Court or this Court ---- Your adversary says that if we accept the implications of your argument, it amounts to saying that a position, an argument that a lawyer makes in court, is never objectively unreasonable unless the Supreme Court has held precisely to the contrary. And I think you might even say even then maybe the Supreme Court changes its mind. Well, I do cite a case in one of the briefs that says exactly that, but that's not the situation here. Again, this Court on Bank and the Supreme Court neither have even been presented with these arguments, other than through the petitions, which again, to use it loosely, don't count as far as this goes. I don't understand, given that we cited numerous cases and reasoning, not all of which were abrogated, but again, I'm frustrated, Your Honor, with all due respect, and I mean that, I'm frustrated because this notion that ---- and again, it's right here on page 12 of ---- I'll call it mine since it's my opening brief. On page 12, a quote from Southern District Court. Once a decision has been filed, it's in the public domain. Its influence is based solely upon readers' views of its merits, whether vacated or not. So let's say just for example's sake, okay, for the sake of example, let's suppose I cited a case from another circuit, a district court case that we all agree, we might not agree, but let's say we agree that that case in that circuit is, quote, no longer good law. And this court or this court, let's say, sitting on bank, agreed, found that we think the ---- as has happened, I gave examples. This court found that we think that the Southern District of Iowa, for example, was correct in that ---- I think that's in the Sixth Circuit, I think ---- that the Sixth Circuit in reversing or abrogating that decision was wrong, and we hereby adopt or follow the reasoning of the district court. I gave actual examples of that. Now, how is it possible or even logical that this court can do that, but I can't? I am precluded. What was reasonable today is no longer reasonable. Again, we're talking about reason, not authoritativeness in the binding sense or even in the legalistic sense. A law review article is not binding in any sense. It's just someone's opinion. But if the opinion is reasonable, and I quote it, I'm allowed to do that. It doesn't matter whether nine other professors follow and they think Professor No. 1 is wrong. If the argument is substantively reasonable, then it's reasonable. And again, here, and I know Your Honor mentioned with the Supreme Court, yes, even a Supreme Court case, the mere existence of it, and again, we cite examples of that too, does not preclude someone from challenging it. But we're not even doing that. How is ---- to me, it just makes no sense whatsoever that sanctions are even debatable when Judge Belserra acknowledged that we had good arguments. Yes, we acknowledged some of those arguments, the bulk, were precluded by a panel of this court, i.e. G. Vigniello. But this notion, and again, I'm frustrated with this. I'm sorry? Would you remind me how many of the cited cases you have post-date both American Pipe and Giovanello? I'm just looking at it. Sure. It seems like an awful lot of them are pre-Giovanello cases. Yes, I think most, if not all, of them are. So to the extent they were out there when Giovanello was decided, the time to bring them to this court's attention was in Giovanello, which I assume you did. You did. And the court was not persuaded. So once you've presented your arguments to a panel of this court and it has rejected them, I'm not sure you get to keep coming back to other panels with the same cases that have not persuaded. But again, Judge, and I'm frustrated because this is ---- I don't mean any disrespect. This is an absolute black ---- we're dealing with black-letter issues. And again, I don't have the citations memorized, but they're in the briefs. There was nothing to be interpreted or assumed from the denial of an en banc petition. If this ---- I suppose, I suppose if this court, the en banc, had wanted to say we think any similar application in the future would be frivolous and Giovanello is so overwhelmingly logical that it can dare not be challenged, I suppose they could have said that. But it just simply was a short order form saying we deny it, which this court probably does in 99 percent of similar petitions. So what you're saying, Your Honor, is that something ought to be assumed or read from that denial and or the Supreme Court's. Okay. And again, I'm frustrated because I've absolutely done absolutely nothing that in my view is even remotely sanctionable. Judge Bolsera never said that my arguments in substance were frivolous. Those arguments were never even presented to, much less rejected by the en banc court in this circuit or by the Supreme Court. I'm not allowed to make arguments that have been accepted by courts throughout the country, not all of which have been advocated, but so what even if they have been. It's the reasoning. It's the reasoning that counts. This whole system is supposed to be based on reasoning, at least when that reasoning does not come into context as binding precedent. That part I understand. But any district court or circuit court like the Seventh Circuit in the Jimenez case that said that totally would have continued if there was an appeal of the cert denial, how is it even possible that I'm not allowed to cite those cases? This court has the right to agree with them, but I can't cite them? Your time has long expired. Yes, I see that. Thank you both. Thank you. Reserved decision. Thank you.